DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. Paul T. Willey, defendant below and appellant herein, entered guilty pleas to two counts of forgery in violation of R.C. 2913.31.
The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR
 "PAUL WILLEY DID NOT VOLUNTARILY PLEAD GUILTY DUE TO THE TRIAL COURT'S FAILURE TO IMPOSE A SENTENCE AS PREVIOUSLY PROMISED, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."
SECOND ASSIGNMENT OF ERROR
 "THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.14(E)(4) AND R.C. 2929.19(B)(2)(c) WHEN ORDERING PAUL WILLEY TO SERVE CONSECUTIVE SENTENCES IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."
THIRD ASSIGNMENT OF ERROR
 "THE RECORD IS DEVOID OF EVIDENCE SUPPORTING THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES, IN VIOLATION OF PAUL WILLEY'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THEUNITED [SIC] STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE
OF THE OHIO CONSTITUTION."
This case involves a cross-state crime spree that began in Guernsey County and ended in Washington County. A brief summary of the facts pertinent to those events, as well as the procedural posture of the case, is as follows. On December 29, 2000, appellant and three other people drove a stolen Ford Tempo from Cambridge to Beverly. In Beverly they stopped at a Citizens Bank drive through and cashed a $45 forged check. The check was drawn on the account of Randy Anderson. The group then drove to the Lakeside Motel, located on State Route 60, and rented a room. At the motel, appellant represented himself as Randy Anderson and paid for the room with another forged check drawn on Anderson's account.
Subsequently, the group drove to the Ames Department Store in Marietta. At the store they purchased in excess of $700 in merchandise. This time, however, they paid with a forged check drawn on the account of William and Dawn Dailey.[1] The Ames store manager was suspicious of the group. He followed them into the parking lot, recorded their vehicle's license number and reported this information to the police. Later, appellant was arrested and he readily admitted his involvement with these offenses and others that had taken place in Guernsey County.
On April 11, 2001, the Washington County Grand Jury returned an indictment charging appellant with three counts of forgery in violation of R.C. 2913.31(A)(3). Appellant pled not guilty.[2] Appellant later agreed to plead guilty to two counts in exchange for concurrent sentences. The matter came on for hearing on September 17, 2001 at which time the trial court explained to appellant his constitutional rights and endeavored to ascertain that his guilty pleas were knowing and voluntary. Satisfied that this was the case, and after a review of the nature of the charges against appellant as well as the specifics of the plea agreement, the court accepted appellant's guilty pleas and passed the matter for pre-sentence investigation.
At the October 31, 2001 sentencing hearing, the trial court: (1) sentenced appellant to a one year prison term for both offenses; and (2) ordered that the sentences be served consecutively. Appellant, citing the plea agreement, objected to imposition of consecutive sentences. The trial court responded, however, that the agreement was reached and the pleas accepted before the court had reviewed the pre-sentence investigation report and learned of appellant's "extensive" criminal background. At this juncture the court offered to permit appellant to "withdraw" his pleas and "go back to trial." Appellant declined the court's invitation. This appeal followed.
 I
Appellant argues in his first assignment of error that his guilty plea was not voluntary. Appellant contends that the trial court did not impose concurrent sentences as promised during the change of plea hearing. In support of his petition, he cites an Eighth District decision that provides that a guilty plea is not voluntary when a trial court fails to impose sentences as promised at a change of plea hearing. See State v.Triplett (Feb. 13, 1997), Cuyahoga App. No. 69237. Appellant likewise argues that his plea in the case sub judice was not voluntary because he did not receive concurrent sentences. Thus, appellant reasons, his conviction should be reversed. We are not persuaded.
Initially we note that we agree with appellant's interpretation of events at the change of plea hearing. The record does, in fact, reveal that the trial court advised appellant that he would receive concurrent sentences. Our inquiry does not end at this point, however. In Triplett
the trial court did not give the defendant the opportunity to withdraw his guilty plea. In the instant case, however, after the trial court informed appellant about the court's unwillingness to abide by its previous comments regarding appellant's sentence, the court did provide appellant the opportunity to withdraw his guilty plea. The trial court explicitly asked appellant if he wished to withdraw his plea and proceed to trial. Appellant responded in the negative. Under these circumstances, we cannot characterize appellant's guilty plea as involuntary.
We also point out that in the context of plea agreements breached by the prosecution, the available remedies are generally either to order specific performance of the agreement or to allow rescission (i.e. withdrawal) of the guilty plea. See generally Santobello v. New York
(1971), 404 U.S. 257, 263, 30 L.Ed.2d 427, 433, 92 S.Ct. 495, 499; also see State v. Matthews (1982), 8 Ohio App.3d 145, 146, 456 N.E.2d 539,541; State v. Jewell (Jan. 24, 1995), Meigs App. Nos. 94CA4 94CA5.State v. Minshall (Nov. 9, 1993), Meigs App. No. 93CA511. In the instant case, the trial court did permit appellant to withdraw his guilty plea if he desired to do so, as would have been the case if the prosecution had "breached" the agreement. Appellant was provided that opportunity. He declined to exercise it, however. We find that his rights were not violated or that no error occurred.
Our decision on this point is supported by State v. Sheaffer (Dec. 26, 1991), Wayne App. No. 2660. In Shaeffer, the Wayne County Common Pleas Court agreed to impose a sentence in that county concurrent with a sentence imposed in Holmes County. However, the negotiated plea occurred before the court learned of the defendant's extensive criminal background. Once that information was made known, the court refused to impose concurrent sentences. The court did allow the defendant to withdraw his guilty plea, however. The matter proceeded to trial and the defendant was convicted. On appeal, the defendant argued that he should not have received consecutive sentences and that he should have received the benefit of the original plea bargain. The Ninth District rejected that argument and concluded that no violation of appellant's due process rights occurred. The court refused to modify the sentences to reflect the earlier agreement.
Similarly, we find no violation of appellant's due process rights in this case. The trial court properly and correctly afforded appellant an opportunity to withdraw his guilty plea. Again, appellant declined the court's invitation. That said, appellant cannot now reasonably maintain that his plea was not voluntary.
Accordingly, we overrule appellant's first assignment of error.
 II
Appellant argues in his second assignment of error that the trial court erred by not making the required statutory findings necessary to impose consecutive sentences. The prosecution concedes this point in its brief and, from our own review of the record, we agree that the court's findings were insufficient.Our analysis begins with the provisions of R.C. 2929.14(E)(4) which state in pertinent part:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
This statute sets out a "tri-partite procedure" for imposing consecutive prison sentences: first, the trial court must find that consecutive sentences are "necessary" to protect the public or to punish the offender; second, the court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses; and third, the court must find the existence of one of the three enumerated circumstances in sub-parts (a) through (c). State v. Lovely, Scioto App. No. 00CA2721, 2001-Ohio-2440; State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28. Further, a trial court must make a finding that gives its reasons for imposing consecutive sentences. R.C. 2929.19(B)(2)(c).
Turning to the November 7, 2001 sentencing entry, we note that the only explanation given by the court for imposing consecutive sentences is its finding that appellant's "criminal history requires consecutive sentences." While this may arguably be sufficient under R.C.2929.14(E)(4)(c), it does not establish any of the other above mentioned factors. We therefore turn to the transcript of the October 31, 2001 sentencing hearing to determine if any of the other findings appear on the record. Once again, we do not find sufficient information to conclude that the trial court made the requisite findings or engaged in the required statutory analysis.[3] While the court's dialogue was arguably sufficient to satisfy the R.C. 2929.14(E)(4)(c) factor, it did not satisfy the remaining requirements of the statute. Imposition of consecutive sentences without those findings was improper. Appellant's second assignment of error is therefore well taken and sustained.[4]
Our ruling on appellant's second assignment of error renders his third assignment of error moot. Thus, it will be disregarded pursuant to App.R. 12(A)(1)(c). Having sustained appellant's second assignment of error, we affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand the case for further proceedings (re-sentencing) consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.[5]
Harsha, J. Kline, J. Concur in Judgment Opinion.
[1] The check was apparently signed by one of the other people in the group, who presented herself as Dawn Daily. The instrument was filled out by appellant.
[2] Appellant initially pled guilty to these charges, against the advice of his counsel, but was then allowed to retract that plea later in the hearing.
[3] {¶ a} The court's remarks as to why it imposed consecutive sentences are as follows:
 {¶ b} "It is therefore ordered that he serve 12 months on each offense and the offenses are to be consecutive to each other and consecutive to the time that he is presently serving.
 {¶ c} "* * *
 {¶ d} "The sentences are ordered to be served consecutive to one another to fulfill the purpose of 2929.11. He — his criminal history requires consecutive sentences.
 {¶ e} "* * *
 {¶ f} "[DEFENSE COUNSEL]: I would, Judge, because I know we spoke to this before we entered a plea to the charge, that the prosecutor was going to recommend concurrent sentences, and the Court indicated that he was going to impose concurrent sentences if he did enter a plea, and now the Court obviously has entered consecutive sentences —
 {¶ g} "* * *
 {¶ h} "THE COURT: — you read that PSI, this young man has an extensive record.
 {¶ i} "* * *
 {¶ j} "THE COURT: Based on what was presented to me, and neither of you gentlemen stepped forward and told me of this extensive criminal record." (Emphasis added.)
[4] We emphasize that we do not reach the question of whether consecutive sentences were warranted in this case, or whether the record would otherwise support their imposition if the required statutory analysis were completed. We hold only that the trial court did not follow the proper procedure to impose consecutive sentences.
[5] As we have stated repeatedly, nothing in this opinion should be misconstrued as criticism for the way this case was handled by the trial court. The endless complexity of the convoluted sentencing statutes, not the actions of the trial court, is responsible for the frustrating and problematic state that we currently occupy. See, e.g., State v. McPherson
(2001), 142 Ohio App.3d 274, 282-283, 755 N.E.2d 426. State v. Ferguson
(Aug. 19, 1999), Pickaway App. No. 99CA6.